UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
FANNY M. RODRIGUEZ,
                             Plaintiff,

                 -v-                                               16-CV-9951 (JPO)

NANCY A. BERRYHILL,                        OPINION AND ORDER
   Acting Commissioner of Social Security,
                              Defendant.
---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

      Plaintiff Fanny Rodriguez challenges a final decision of the Commissioner of Social Security denying her disability claim. Rodriguez and the Commissioner both move for judgment on the pleadings. For the reasons set forth below, Rodriguez's motion is granted, and the Commissioner's motion is denied.

**I.    Background**

      Rodriguez applied for disability benefits in 2013. (Tr. 233.) She alleged disability beginning in 2001 due to depressive and anxiety disorders, hypertension, hyperlipidemia, and diabetes mellitus. (Tr. 233, 256.) After her application was denied, she requested a hearing before an administrative law judge ("ALJ"). (Tr. 147, 151.) In 2015, the ALJ held that Rodriguez was not disabled within the meaning of the Social Security Act and was not entitled to disability benefits. (Tr. 10.) The ALJ relied on the following medical opinions:

      <u>Dr. Davila-Katz</u>: Dr. Nicolas Davila-Katz is Rodriguez's primary psychiatrist. In a letter from 2013, Dr. Davila-Katz stated that Rodriguez has major depressive disorder, and that she sees a psychiatrist once a month. (Tr. 250.) In another letter, dated 2015, Dr. Davila-Katz reported that Rodriguez has been a patient of his mental health clinic since 2001, that she had been diagnosed with major depressive disorder, panic disorder with agoraphobia, and post-

1

traumatic stress disorder, and that she "experiences many of the symptoms associated with" these diagnoses. (Tr. 430.) The letter concluded that "Rodriguez's mental health conditions[,] compounded by her chronic health conditions[,] negatively impact her ability to seek or maintain employment" and that her "condition will not be resolved within a year." (Tr. 430–31.)

In a form dated 2014, Dr. Davila-Katz indicated that Rodriguez's mental impairments caused moderate limitations on her abilities to understand, remember, and carry out simple instructions, as well as extreme limitations on her abilities to make judgments on simple and complex work-related decisions and to understand, remember, and carry out complex instructions. (Tr. 370.) Dr. Davila-Katz also marked that Rodriguez has extreme limitations on her abilities to interact appropriately with the public, supervisors, and co-workers, respond appropriately to usual work situations, and make changes in a routine work setting. (Tr. 371.)

In a separate, undated medical source statement, Dr. Davila Katz reported that Rodriguez had a current Global Assessment of Functioning ("GAF") of 50,[1] and that her highest GAF in the past year was 51. (Tr. 419.) The medical source statement further indicated that Rodriguez had moderate to extreme loss in her abilities to perform "work-related mental activities" and "to respond appropriately to supervision, coworkers and work pressure," as well as extreme limitations on her activities of daily life, difficulties maintaining social functioning, constant deficiencies of concentration, and episodes of deterioration or decompensation. (Tr. 421–22.) Dr. Davila-Katz estimated that Rodriguez's impairments would cause her to be absent from work

---

[1] Scores from 51 to 60 indicate moderate symptoms or moderate difficulty in social occupational or social functioning, while scores from 61 to 70 indicate some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." (*See* Dkt. No. 14 at 4 n.3.)

more than three times a month. (Tr. 420.) The ALJ assigned Dr. Davila-Katz's opinion "little weight." (Tr. 21.)

Montefiore treatment notes: The record also contains Rodriguez's treatment records from Montefiore Behavioral Health Center from 2012 to 2015. (Tr. 47–74, 337–54, 381–406, 478–547, 551–53.) The treatment notes indicate that Rodriguez arrived to her scheduled appointments on time, that her appearance was well-groomed, that her cognition was normal, and that her attention and concentration were intact. (Tr. 47–74, 337–54, 381–406, 478–547, 551–53.) At the same time, the treatment notes report Rodriguez's affect as restless, her mood as anxious, depressed, or anguished, and her thought content as preoccupied or worrisome. (Tr. 346, 352, 389, 394, 395, 403, 532, 542.) The treatment notes also describe her symptoms and their effects on her daily living, including debilitating depression, memory difficulties, and low energy. (Tr. 341–42, 346, 383.) Nonetheless, these notes show that Rodriguez gradually improved in 2014 and 2015, including positive responses to medication. (Tr. 405, 481, 551.) Rodriguez's GAF scores fluctuated between 50 and 65 from 2013 to 2015. (Tr. 344, 351, 389, 395, 399, 405, 488, 494, 500, 532, 541.)

Dr. Mahony: Dr. David Mahony saw Rodriguez once, on August 7, 2013. (Tr. 355–58.) He found that she had "mild difficulty maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks" and "mild limitations relating to others and dealing with stress." (Tr. 356.) He stated that these difficulties were "consistent with psychiatric problems," diagnosing Rodriguez with major depressive disorder, mild, and anxiety disorder. (Tr. 356.) He indicated that her prognosis was "poor" because she "did not seem to be responding to psychiatric treatment." (Tr. 357.) However, he also found that "[t]here is no evidence of limitation in [Rodriguez's] ability to follow and understand simple

3

directions and instructions or perform simple tasks independently," nor "limitations on making appropriate decisions." (Tr. 356.) Dr. Mahony concluded that Rodriguez's psychiatric problems "do not seem to interfere with the [her] ability to function on a daily basis." (Tr. 356.) The ALJ assigned "great weight" to Dr. Mahony's opinion. (Tr. 21.)

Dr. Kamin: Dr. E. Kamin is a medical expert for the state. He never examined Rodriguez, instead basing his opinion on a review of her psychiatric records. Dr. Kamin found that Rodriguez had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. (Tr. 114.) He concluded that Rodriguez did not have a severe combination of impairments. (Tr. 110–16.) The ALJ assigned "great weight" to Dr. Kamin's opinion. (Tr. 22.)

Dr. Mescon: Dr. Marilee Mescon performed a consultative internal medicine examination in 2013. (Tr. 359-362.) Dr. Mescon diagnosed Rodriguez with a history of postherpetic neuralgia involving the right arm and the right side of her neck, well controlled hypertension, diabetes, and a sleep disorder, and found her prognosis "fair." (Tr. 362.) The consultative report concluded that "[o]n the basis of this examination, there are no limitations in the claimant's ability to sit, stand, climb, push, pull, or carry heavy objects at this time." (Tr. 362.) The ALJ assigned "great weight" to Dr. Mescon's opinion. (Tr. 23.)

The ALJ concluded that Rodriguez suffered from depressive and anxiety disorders, hypertension, diabetes mellitus, and hyperlipidemia. (Tr. 18.) Although the ALJ found that Rodriguez's impairments could reasonably be expected to produce the alleged symptoms, the ALJ also determined that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 19.) The ALJ concluded that

Rodriguez's physical and mental impairments were not severe and that she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities. (Tr. 18.)

Rodriguez's request for an administrative appeal was denied. (Tr. 1–5.) This appeal followed.

## II. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Charter*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Under this deferential standard of review, a district court can reverse ALJ findings of facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis omitted) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (internal citation omitted).

## III. Discussion

The key issue on appeal is whether the ALJ improperly discounted the opinion of Rodriguez's treating physician, Dr. Davila-Katz, in violation of the "treating physician rule."

In weighing medical opinions, ALJ's must give "controlling weight" to a medical opinion from a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

5

record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). This is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). "The mandate of the treating physician rule to give greater weight to the opinions of doctors who have a relationship with a plaintiff is particularly important in the mental-health context." *Rodriguez v. Astrue*, No. 07 Civ. 534, 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009).

An ALJ must "give good reasons" for the weight accorded to the treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2). Failure to do so is grounds for a remand. *Schaal*, 134 F.3d at 505. Among the factors that indicate the weight to be accorded to the treating physician are: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Id.* at 503; *see also* 20 C.F.R. § 404.1527(c)(2). The length and frequency of the treatment relationship are "especially relevant in evaluating claimant's psychiatric impairments." *Gorman v. Colvin*, 13 Civ. 3227, 2014 WL 537568, at *11 (E.D.N.Y. Feb. 10, 2014).

The ALJ's first justification for according little weight to Dr. Davila-Katz's opinion was that it seemed to be based on the general limitations associated with major depressive disorder as opposed to Rodriguez's actual symptoms. (Tr. 21.) For example, in his January 17, 2014 opinion, Dr. Davila-Katz explained that his responses were based on Rodriguez's diagnosis of major depression disorder, "a mental health condition that can be disabling and which often causes impairment in a person's ability" to carry out activities, make judgments, remember instructions, and interact appropriately. (Tr. 370–71.) But Dr. Davila-Katz's forms clearly

6

instruct the medical evaluator to indicate the severity of the limitations as they pertain to the specific claimant. (*See* Tr. 370 ("Please give us your professional opinion of <u>what the individual can still do despite his/her impairment(s)</u>."); Tr. 419 ("Please answer the following questions concerning your patient's impairments.")). In both of his evaluations, Dr. Davila-Katz explains that his opinions are based on Rodriguez's mental health diagnoses, as established by psychiatric evaluations and assessments of her observed and reported symptoms. (Tr. 370–71, 420.)

Although Dr. Davila-Katz did use generalized language—explaining, for example that major depression "can be disabling" and "often causes" impairments—this alone is not enough to entirely discount a medical opinion based on years of treatment. (*See* Tr. 370–71.) The doctor's failure to include individualized support for the findings in his evaluation "does not mean that such support does not exist; [the physician] might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Moreover, "where the import of the physician's opinions is ambiguous . . . the ALJ has a duty to seek clarification." *Barbera v. Barnhart*, 151 F. App'x 31, 33 (2d Cir. 2005). The ALJ did not do so here, which supports a remand. *See, e.g.*, *Moran v. Astrue*, 569 F.3d 108, 114–15 (2d Cir. 2009).

The ALJ's second justification was that the medical records did not support Dr. Davila-Katz's functional analysis. (Tr. 21.) But this finding, which was based on the ALJ's conclusion that Rodriguez's mental status examinations were essentially normal, is contradicted by assessment notes stating that Rodriguez was restless, anguished, and anxious. (Tr. 346, 352, 389, 394, 395, 403, 532, 542.) In addition, Rodriguez's treatment notes catalogue an extensive list of symptoms of anxiety, low energy, poor memory and concentration, insomnia, and social isolation. (Tr. 341, 342, 346, 353–54, 383, 386, 526, 535.) Even the consultative examiner, Dr.

7

Mahony, found that Rodriguez's affect was distressed, her mood was dysthymic, her cognitive functioning was below average, and she had impaired attention, concentration, and memory skills. (Tr. 355–58.) Granted, the ALJ, rather than this Court, is the primary factfinder, but there was enough contradictory evidence here to trigger the ALJ's duty to seek clarification and develop the administrative record before discounting the opinion of the treating physician. *See e.g., Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998).

The flip-side of this problem is that the opinions on which the ALJ did rely—those of Drs. Mahony and Kamin—resulted from a consultative visit in connection with Rodriguez's social security application. The ALJ accorded great weight to the opinion of Dr. Mahony, which was based on a one-time examination. (Tr. 355–58). The ALJ also accorded great weight to the opinion of Dr. Kamin, who works for the state and whose assessment was based solely on a review of partial medical records, including Dr. Mahony's assessment, without meeting or examining Rodriguez. (Tr. 110–16.) "[A] consulting physician's opinions or report should be given limited weight" because "'consultative exams are often brief, are generally performed without the benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'" *Cruz v. Sullivan*, 912 F.2d 8, 13 (2nd Cir. 1990) (quoting *Torres v. Bowen*, 700 F. Supp. 1306, 1312 (S.D.N.Y.1988); *see also Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); *Rodriguez*, 2009 WL 637154, at *26 ("Courts have held that the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little, if any, weight.") (quoting *Filocomo v. Chater*, 944 F. Supp. 165, 170 n.4

(E.D.N.Y.1996)). Moreover, both of these assessments predate Dr. Davila-Katz's opinions,[2] and therefore may fail to account for any deterioration in Rodriguez's condition over time. *See Balodis v. Leavitt*, 704 F. Supp. 2d 255, 266 (E.D.N.Y. 2010) ("When there is such a lengthy time period between opinions, the ALJ must explain his decision to choose the earlier opinion over the more recent opinion where deterioration of a claimant's condition is possible.").

The Court concludes that the ALJ erred by improperly discounting the opinions of Rodriguez's treating psychiatrist and, instead, affording "great weight" to earlier examinations by two consulting physicians, which were based on a one-time assessment and a medical records review. The Court does not hold that Rodriguez is disabled or that she is entitled to social security benefits; rather, her case must be remanded to allow the agency to more thoroughly develop the record, and to accord proper weight to the various medical opinions in the record.

## IV. Conclusion

For the foregoing reasons, Rodriguez's motion for judgment on the pleadings is GRANTED. The Commissioner's motion for judgment on the pleadings is DENIED. Pursuant to 42 U.S.C. § 405(g), the case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of Court is directed to close the motions at Docket Numbers 11 and 13 and to close this case.

SO ORDERED.

Dated: March 26, 2018
New York, New York

J. PAUL OETKEN
United States District Judge

---

[2] Dr. Mahony's and Dr. Kamin's opinions are dated August 2013. (Tr. 116, 355.) Dr. Davila-Katz's first medical source statement was completed in January 2014. (Tr. 372.) The second assessment is undated, but it includes diagnoses that were not established in Rodriguez's treatment records until December 2014, indicating that this opinion was completed later in time. (Tr. 419, 490).

9